Denise POHLMAN, Plaintiff,

v.

Lincoln J. STOKES, et al., Defendants.

No. C–1–86–618.

United States District Court,
S.D. Ohio, W.D.

Oct. 30, 1987.

Roger C. Stridsberg, Marlene Penny Manes, Cincinnati, Ohio, for plaintiff.

Brian E. Hurley, Asst. Pros. Atty., James D. Gilbert, Cincinnati, Ohio, for Stokes, Murdock, Taft, DeCourcy and Withworth.

David Winchester Peck, Cincinnati, Ohio, for Schuster.

ORDER

HERMAN J. WEBER, District Judge.

This matter is before the Court upon the Motion for Summary Judgment filed by defendants Stokes, Withworth, Schuster, Murdock, Taft and DeCourcy (doc. no. 4) and those certain defendants are the only defendants who have answered in this case; there is no proof of service of plaintiff's Complaint on any of the remaining named defendants and none of those remaining defendants have entered an appearance through counsel or otherwise.

Defendants' Motion for Summary Judgment was filed August 18, 1986 and, after three extensions, plaintiff filed her first response on September 30, 1986 (doc. no. 8); plaintiff's response requested additional time to further respond to the Motion for

Summary Judgment and requested a continuance of the hearing on the motion and/or submission of the motion for decision. On October 30, 1986, after an additional month had passed, the Magistrate again extended plaintiff's time to respond with counter documents rather than grant defendants' motion, and ordered plaintiff to file any memoranda, affidavits, or documents upon which she chose to rely (doc. no. 11). Plaintiff then supplemented her first response on November 19, 1986 in which she again requested another opportunity to obtain and file further affidavits (doc. no. 12).

More than one year has passed since defendants filed their Motion for Summary Judgment. While no hearing was held, such is clearly not mandatory and plaintiff has had more than adequate time and opportunity to conduct discovery and present documents in opposition; plaintiff also understood that the matter would be submitted upon certain cut-off dates. Accordingly, the matter is now ripe for this Court's consideration.

### I.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. P. 56. On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986) (original emphasis).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979), the United States Supreme Court has recently stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather than as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* 106 S.Ct. at 2553; *Anderson*, 106 S.Ct. at 2511. Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Catrett*, 106 S.Ct. at 2553. Significantly, the Supreme Court also instructs that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence. *Id.; Anderson*, 106 S.Ct. at 2511. Rule 56(e) requires plaintiff to go beyond the pleadings and by her own affidavits, designate "specific facts showing that there is a genuine issue for trial." *Id.*

### II.

The undisputed material facts in this case, construed in the light most favorable to the plaintiff, establish the following:

1) Plaintiff was admitted to the Community Correctional Institute ("CCI") on February 4, 1985 and remained incarcerated there until May 9, 1985, with the exception

of four days in April, 1985 which she spent at University Hospital. Plaintiff was severely depressed when she arrived at CCI, and was seen by a psychiatrist on February 8, 1985 and was prescribed Tofranil and Elavil.

2) During the intake screening on February 4, 1985, plaintiff stated that she was four months pregnant; she was given a physical examination by Dr. Schuster on February 6, 1985 which confirmed her pregnancy. Plaintiff was then placed on a pregnancy diet and was scheduled to be seen nine days later by a physician in the Obstetrics Department at University Hospital.

3) On February 11, 1985, preliminary laboratory work was done in connection with the plaintiff's pregnancy. On February 15, 1985, plaintiff was examined by a cytotechnologist and on February 18, 1985, plaintiff was sent to the Cincinnati Diagnostic Laboratories, Inc. for a glucose challenge.

4) On April 11, 1985, plaintiff was sent to University Hospital for an ultrasound test and plaintiff was informed that the fetus was anencephalic. On April 16, 1985, she was referred by Dr. Schuster to Dr. Neum, a neurologist, based on her complaints of numbness in her arms. Two days later, plaintiff was taken to University Hospital's Perinatal Clinic for a repeat sonogram.

5) On April 18, 1985, the anencephaly was confirmed and plaintiff was counselled with regard to her pregnancy; a meeting with her Chaplain, Dr. Schuster, and the father of the fetus was scheduled to discuss termination of the pregnancy. Dr. Woods also counselled the couple with regard to the anencephalic fetus.

6) Based upon plaintiff's history and the series of problems, it was deemed necessary that the father of the fetus be present for interviews and testing. CCI staff, including defendant Withworth, issued orders to see that this was accomplished. On April 24, 1985, plaintiff was informed that early labor could be induced and that the fetus would die in any event.

7) On April 25, 1985, CCI was notified by University Hospital to have plaintiff admitted to the hospital and plaintiff was transported on that date and admitted to Labor and Delivery. Plaintiff delivered a child on April 26, 1985 at University Hospital and the child died shortly after delivery. Plaintiff remained at the hospital until April 29, 1985.

8) Plaintiff made it known that she did not want labor induced, but she was forced to have the baby early. Plaintiff executed consent to the procedure pursuant to false representations as to its meaning and without an understanding of its effect.

9) After delivery, plaintiff began bleeding which she reported each day on sick call at CCI. The bleeding continued and plaintiff was told that it was normal and no examination was performed.

10) Plaintiff was returned to CCI on April 29, 1985 and was immediately placed on an individual health plan which included prescriptions for pramelet, iron, folic acid and rufen for 30 days. She was scheduled to return to the clinic on May 20, 1985. After labor was induced, plaintiff was on sick call every day.

11) On May 3, 1985, plaintiff became emotionally upset and Atarax was prescribed to calm her. Plaintiff was seen again by Dr. Schuster and he discontinued the Atarax prescription. On May 9, 1985, plaintiff was transferred to Marysville Reformatory.

12) After plaintiff was transferred to Marysville, she saw the nurse each day for medication. On May 28, 1985, plaintiff saw a gynecologist who advised her that her condition was normal.

13) Plaintiff was then transferred to the Orient Correctional Institute and approximately one month later, she saw a gynecologist who informed her that she had an infection from constant bleeding. Plaintiff was given four pills of Flagyl and received no further medication. Plaintiff was released from Orient on July 11, 1985.

14) In August 1985, plaintiff became aware that she was pregnant, and on September 12, 1985, emergency surgery was

**1182**

performed for an ectopic pregnancy. Damage to plaintiff's reproductive organs was discovered and plaintiff is now unable to have children.

### III.

■ A prisoner's constitutional rights under the Eighth Amendment to the Constitution of the United States and Title 42, United States Code, Section 1983 are violated by prison officials or employees when they are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed. 2d 251 (1976). A prison official or employee is deliberately indifferent to a prisoner's serious medical needs when he or she unnecessarily and wantonly inflicts pain upon the prisoner, or wantonly denies or delays treatment. *Id.* at 104–05, 97 S.Ct. at 291–92. To constitute deliberate indifference, a defendant's act must be wanton, not simply negligent. *Id.*

■ A claim of negligence in the diagnosis or treatment of a medical condition does not meet the deliberately indifferent standard. *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292. Complaints setting forth primarily a difference of opinion about the course of treatment afforded an inmate also do not meet that standard. *Randall v. Wyrick*, 642 F.2d 304, 308 (8th Cir.1981) (*per curiam*). A Complaint must allege more than malpractice, negligence or a difference in professional opinion.

■ The record in this case shows that plaintiff has received much medical attention since her incarceration by Ohio authorities, including consultations with outside physicians. Although she raises questions as to the proper course of treatment afforded her, the most the undisputed material facts can prove is a claim for medical malpractice. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *See Estelle*, 429 U.S. at 106, 97 S.Ct. at 292.

■ Nothing in defendants' conduct shows wanton infliction of pain on plaintiff, or a wanton denial or delay of treatment. Defendants' conduct, therefore, does not establish deliberate indifference to plaintiff's serious medical needs, but, at best, expresses plaintiff's disagreement with the medical care provided and her opinion that the medical care was inadequate. Significantly, plaintiff has characterized her claims as based on negligence and medical malpractice.

The Court concludes that plaintiff was not the victim of deliberate indifference and finds that her Complaint fails to state a cognizable claim since questions of medical judgment are not subject to judicial review. Plaintiff is not barred from pursuing her available avenues of relief in the appropriate state tribunals but, as a matter of law, she has not presented a justiciable issue for a federal court's consideration.

Accordingly, the Report and Recommendation of the United States Magistrate (doc. no. 13) is REJECTED and defendants' Motion for Summary Judgment (doc. no. 4) is hereby GRANTED as to the federal claim. Having dismissed the federal claim, the Court hereby DISMISSES WITHOUT PREJUDICE the pendent state law claims for lack of jurisdiction. Judgment on the federal claim is hereby entered against plaintiff in favor of all defendants.

IT IS SO ORDERED.